487 So.2d 1295 (1986)
STATE of Louisiana, Plaintiff,
v.
James F. MARTIN, Defendant.
No. K85-1257.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1986.
Writ Denied July 1, 1986.
*1296 Sheryl L. Laing, Asst. Dist. Atty., Alexandria, for plaintiff.
Eugene P. Cicardo, Alexandria, for defendant.
Before YELVERTON and KING, JJ., and COX, Judge Pro Tem.[*]
KING, Judge.
The sole issue presented by this supervisory writ is whether or not the trial court erred in granting the defendant's motion to suppress evidence that was obtained pursuant to an allegedly defective search warrant.
James F. Martin (hereinafter referred to as defendant) was arrested and charged by bill of information with possession of marijuana, a violation of LSA-R.S. 40:966(D)(1).
Defendant filed a motion to suppress all evidence obtained in the search of his residence alleging that the search warrant, which had been issued to search his residence, was defective and invalid. After a hearing on the motion, the trial judge granted defendant's motion to suppress. On application of the State, we granted a supervisory writ to review the correctness of the trial court's granting of the motion to suppress and ordered the record transcribed and filed, briefs filed by the parties, and scheduled the matter for oral argument. On April 18, 1986, the day on which oral arguments were scheduled, defendant filed in Open Court a motion to dismiss the writ of review, alleging that the writ was not originally properly filed. This Court took the motion to dismiss under advisement. We now deny defendant's motion to dismiss the writ of review and reverse the *1297 trial court's ruling, which granted the defendant's motion to suppress the evidence seized from his residence, and remand the matter to the trial court for further proceedings.

MOTION TO DISMISS WRIT
Defendant, by written motion filed in Open Court on the morning of scheduled oral argument in this Court, has moved this Court to recall, rescind and dismiss the Writ of Certiorari previously granted. The basis of defendant's Motion to Dismiss the writ is that the State did not perfect its writ application, pursuant to the Uniform Rules-Courts of Appeal, Rules 4-1, 4-3, and 4-5. Defendant contends that the State did not timely file a properly verified writ application and did not timely forward a copy of its writ application to the trial judge, all as required by Rule 4 of the Uniform Rules of the Louisiana Courts of Appeal, and for this reason this Court should not have considered or granted the writ.
It is true that the writ application did not fully comply with the Uniform Rules of the Courts of Appeal. The failure to properly verify the writ application and to serve a copy on the trial judge is a valid ground for a refusal to consider the application or for a denial of the writ. But once the writ has been granted, the record is brought up. The record normally contains all pleadings, documents, and evidence necessary for appellate review. Under these circumstances, the Court has the same power and authority to review the case as if it had been brought to the Court by direct appeal. The writ will not then be recalled for the applicant's prior failure to comply with the court rules. The purpose of the Rules are to establish the practice and procedure to be followed in this Court. These Rules can be waived by this Court. The Louisiana Supreme Court has recognized that the prior failure of the applicant for a writ of review to comply with court rules, requiring pleadings and other documents to be annexed to the writ application, will not justify the dismissal of a writ after it has been issued. See Wischer v. Madison Realty Company, 242 La. 334, 136 So.2d 62 (1961); Britt v. Merritt, 219 La. 333, 53 So.2d 121 (1951); Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351 (1942); Laurent v. Unity Industrial Life Ins. Co., 189 La. 426, 179 So. 586 (1938); Hatten v. Haynes, 175 La. 743, 144 So. 483 (1932); Pipes v. Gallman, 174 La. 265, 140 So. 43 (1932). The failure to verify a writ application was raised by a motion to dismiss the writ in the case of Davies v. Consolidated Underwriters, where our Supreme Court stated:
"If the failure of the petitioner for a writ of review to comply with the law requiring certain documents to be annexed to the petition will not justify the dismissal of the writ after it has been issued, by a parity of reasoning, the failure of the petitioner to verify the petition for the writ will likewise not justify the dismissal of the writ when issued. This is particularly so where no issue can arise before this Court based on the failure of the petitioner for the writ to fulfill the requirement." Davies v. Consolidated Underwriters, 199 La. 459, at page 469, 6 So.2d 351 at page 355 (1942).
The State's original application for supervisory writs contained an index of all authorities and items contained therein, a concise statement of the grounds on which the jurisdiction of the Court was invoked, a concise statement of the case, the issues and questions of law presented for determination by the Court, the assignments of error, a transcript of the note of evidence of the hearing on the defendant's motion to suppress, a transcript of the trial judge's oral reasons for judgment and ruling, a copy of the pleadings on which the judgment was founded, a brief and argument on the assignments of error, and a certificate that a copy of the writ application was served on defendant's counsel. Only the applicant's affidavit verifying the allegations of the application and certifying that a copy of the application was delivered or mailed to the respondent judge and opposing counsel are missing. Written notice of *1298 the filing of the State's writ application in this Court was given by the Clerk of this Court to the trial judge, opposing counsel, and the District Clerk of Court on December 31, 1985. There is no dispute that the trial judge and opposing counsel knew that the State's writ was filed in this Court and that no written opposition to the writ application was filed by either the trial judge or opposing counsel before this Court acted on the State's writ application on January 20, 1986. No question has been raised or is now being raised as to the correctness of the documents submitted with the writ application. The entire record of the proceedings in the trial court is now before this Court for review. In these circumstances, we fail to see how the defendant has been prejudiced by the failure of the applicant to swear to matters as to which there is and can be no dispute or to verify service of a copy of the writ application on the trial court and opposing counsel.
For the reasons set forth above, the defendant's motion to recall, rescind, and dismiss the Writ of Certiorari will be overruled and denied.

FACTS
The only witness to testify at the hearing of the motion to suppress was the affiant, Sgt. Mike Rodgers of the Rapides Parish Sheriff's Department. The facts are, therefore, derived from his testimony.
On February 7, 1985, Sgt. Mike Rodgers of the Metro Parish Narcotics Division received information from a confidential informant that he had legally been in defendant's residence and had seen marijuana therein. Pursuant to this information, Sgt. Rodgers executed an affidavit and appeared before Judge William P. Polk to obtain a warrant to search defendant's residence. The affidavit, from which Judge Polk found probable cause to issue the search warrant, described the place to be searched as:
"... [A] brick dwelling, red in color. It has a black screen door on the front. This residence is located at 1102 First Street in Glenmora, Rapides Parish, La. It is a duplex, and is the house on the right side if viewed from the street and its curtilage."
The search warrant also described the property to be searched in the same manner, but included the additional statement, "the left side is/appeared to be vacant."
After obtaining the search warrant from Judge Polk in Alexandria, Sgt. Rodgers, along with other officers, drove to the above-described residence in Glenmora, Louisiana, which is approximately 25 miles from Alexandria. The officers then picked up the Chief of the Glenmora Police Department before proceeding to defendant's residence.
Upon arriving at 1102 First Street in Glenmora, Louisiana, Sgt. Rodgers observed that the apartment on the left, not the right, had the unique black screen door which was contrary to the information that the confidential informant had given him. Sgt. Rodgers additionally observed that the apartment on the right was vacant. Realizing that the warrant partially misdescribed the premises to be searched, the officers simply drove by defendant's residence, and then drove to the Glenmora Police Department, which was about three or four blocks from defendant's residence. Sgt. Rodgers then called Greg Fowler, an Assistant District Attorney for Rapides Parish, and told Mr. Fowler of the deficiency in the affidavit and search warrant. Mr. Fowler then telephoned Judge Polk, and a three-way telephone conversation then took place. After Sgt. Rodgers advised Judge Polk of the situation, Judge Polk, verbally and over the telephone, authorized Sgt. Rodgers to correct the search warrant by drawing a line through the word "right" and writing the word "left", and vice versa, in the proper place on the search warrant, and also by writing his and Judge Polk's initials, as well as the time, on the search warrant by the changes. Although Sgt. Rodgers made the corrections on the search warrant, no changes were made on his affidavit.
After making the correction, the officers returned to defendant's residence, at which *1299 time they searched his residence and seized, among other items, one bag of suspected marijuana, one can of suspected marijuana residue, and five cigarettes suspected to contain marijuana. Lab tests subsequently proved these items were marijuana and criminal charges were then filed against defendant. Defendant subsequently filed a motion to suppress this evidence.

MOTION TO SUPPRESS
The trial judge stated in his reasons for judgment that his decision to grant defendant's motion to suppress was based on what he perceived to be a mandate of the Louisiana Supreme Court in the case of State v. Lee, 247 La. 553, 172 So.2d 678 (1965). In that case the court held invalid a search warrant which originally described the premises to be searched as Municipal Number 2127 Bienville Street, City of New Orleans, but which address was changed by the executing officer, prior to execution of the search warrant, to describe the address as 2123 Bienville Street after receiving permission to make the address change from the issuing judge over the telephone. The Supreme Court noted in Lee that it did not appear that the affidavit naming 2127 Bienville as the place to be searched was amended prior to execution of the warrant, as was the search warrant, and that "this apparent defect alone would be fatal to the validity of the warrant and the search made thereunder."
State v. Lee, supra, has not been overruled. However, it is questionable whether the "super technical concern for the accused," as referred to by Justice Summers in his dissenting opinion in Lee, is still viable at this time. In State v. Korman, 379 So.2d 1061 (La.1980), the Louisiana Supreme Court reversed a trial court's granting of the defendant's motion to suppress marijuana that was seized during the execution of a warrant. The warrant described the place to be searched as "6656 Harry Drive, Apartment # 119." However, during the execution of the warrant, the executing officer realized that the defendant's apartment was located in a building designated by the municipal number 6636 Harry Drive rather than 6656 Harry Drive, as stated in the warrant. The defendant's apartment was the only apartment numbered "119" in the apartment complex. In Korman, the court stated that:
"A search warrant must particularly describe the place to be searched. U.S. Const. Amend. 4; La. Const. art. 1, § 5 (1974); La.Code Crim.P. art. 162. The description contained in the search warrant is adequate if it is sufficiently detailed so as to allow the officers to locate the property with reasonable certainty and with reasonable probability that they will not search the wrong premises. Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925); State v. Segers, 355 So.2d 238 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977).
* * * * * *
Without passing upon the correctness of Lee, it is clearly distinguishable from the instant case. Here, the executing officer did not take it upon himself to amend the search warrant or to knowingly enter and search premises located at a different municipal number from that described in the warrant.
Under the facts of this case, there was little possibility that an apartment not intended to be searched could have been searched through mistake-as indeed it was not. Hence, we conclude that the description in the search warrant sufficiently described the place to be searched. The trial judge erred in holding otherwise." State v. Korman, 379 So.2d 1061, 1063 (La.1980).
In State v. Brooms, 453 So.2d 673 (La. App. 3rd Cir.1984), this court affirmed a trial court's denial of the defendant's motion to suppress evidence which was seized pursuant to an allegedly defective warrant. In that case, the warrant originally described the premises to be searched as apartment number 48 in a specifically described and named housing project. Before executing the warrant, the officer was informed that the defendant's apartment *1300 number was actually 46. The officer then drove to the police station and called the judge, who authorized the officer to change the warrant to reflect the number 46. While at the police station, the officer, pursuant to the judge's authorization, had a dispatcher change both the search warrant and the affidavit to reflect an apartment number of 46.
In Brooms, this Court stated:
"A warrant containing only an erroneous municipal street number, without more (as was presented in Lee) does not meet the test of Korman which requires the description to be such that there is no reasonable probability that the executing officers would search the wrong premises.
In the case at hand, the physical description and location of the premises was set forth. Under these circumstances, there was no reasonable probability that Officer Dyer would search the wrong premises. This officer searched where he intended to search. Defendant's motion to suppress is without factual or legal substance and was properly denied." State v. Brooms, 453 So.2d 673, 676 (La.App. 3rd Cir.1984).
In the instant case, the confidential informant who had given Sgt. Rodgers information proven to be correct on many prior occasions, simply erred in describing defendant's residence to be on the right side of the duplex rather than on the left side of the duplex located at a specifically described address. Due to the fact that both the affidavit and search warrant stated that the place to be searched had a black screen door on the front (which defendant's residence did have), and due to the fact that the search warrant stated one side of the duplex was vacant (which it was) and the confidential informant had been within the defendant's residence located at 1102 First Street within twelve hours of the time that Sgt. Rodgers applied for the warrant, we conclude that there was no reasonable probability that Sgt. Rodgers would search the wrong premises. Therefore, though the affidavit and search warrant contained a minor error, we hold that the search warrant was not fatally defective.
Even if the search warrant, as amended by Sgt. Rodgers, is considered fatally defective, in that the affidavit was not also amended, we hold that such defect does not require suppression of the evidence seized from defendant's residence pursuant to the execution of the warrant. In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court established the "good-faith" exception to the exclusionary rule. In that case, the search warrant was found to be defective because the affidavit upon which it was based failed to establish probable cause to search the named addresses. The Supreme Court reversed the trial court's partial grant of the defendants' motion to suppress evidence, gathered pursuant to the execution of the warrant, stating:
"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, at page ___, 104 S.Ct. 3405, at page 3423, 82 L.Ed.2d 677 (1984).
The court in Leon further stated that the exclusionary rule is designed to deter police misconduct rather than to punish the errors of prosecuting attorneys, magistrates and judges, and that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in the unusual cases in which exclusion of evidence will further the original purpose of the exclusionary rule.
In the instant case, there is no doubt that Sgt. Rodgers was in absolute good faith when he obtained and executed the search warrant. Upon realizing that the warrant partially misdescribed defendant's residence, Sgt. Rodgers did all that he could reasonably be expected to do by then discussing the matter with an Assistant District Attorney and the Judge who issued *1301 the search warrant. The Judge authorized him to amend the warrant. What more could Sgt. Rodgers do to show he was acting in good faith? He was acting on the advice of an Assistant District Attorney, experienced in criminal law, and following the instructions of a judge, learned in the law. We find that exclusion of the evidence seized from defendant's residence, even if the warrant were held to be fatally defective, would not further the purpose of the exclusionary rule; namely the deterrence of misconduct of officers in obtaining and executing search warrants. Accordingly, we conclude that the trial court's ruling granting defendant's motion to suppress should be reversed.
For the foregoing reasons, the ruling of the trial court granting defendant's motion to suppress is reversed and set aside. This matter is remanded to the trial court for further proceedings in accordance with law.
REVERSED AND REMANDED.
NOTES
[*] Judge Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.