I Judge PATRICIA RIVET MURRAY.
On August 10, 2004, the Orleans Parish Juvenile Court adjudicated E.P.[1] delinquent as a result of having committed the crime of purse snatching, a violation of La. *1069 R.S. 14:65.1, on April 29, 2004,[2] but stayed the proceeding.[3] On September 21, 2004, the juvenile court lifted its stay and went forward with the disposition hearing at E.P.’s counsel’s request. On that date, the juvenile court committed E.P. to the custody of the Department of Public Safety and Corrections for one year, but gave him credit for time served (124 days) and suspended the balance of the sentence. E.P. now appeals the adjudication and disposition.
On appeal, E.P. asserts two assignments of error. First, he argues that the trial court erred in adjudicating him delinquent before completing the adjudication hearing. The State replies that the hearing was completed. We agree. .
12At the August 10, 2004 adjudication hearing, the victim, Stephanie Smith, testified regarding the purse-snatching incident. She further testified that following the incident Detective Raymond Radosti showed her a photographic line-up; she identified the perpetrator, put the number of the perpetrator’s picture on the back of the line-up, and signed it. She testified that she recognized the perpetrator by his face and that she would recognize the lineup if shown it. However, defense counsel objected to showing her the line-up because there was confusion regarding the item number that appeared on the envelope in which it was contained. To resolve that confusion, the State then called Detective Radosti as a witness.
Detective Radosti explained that he initially wrote the wrong item number on the back of the line-up that the victim signed, but he immediately realized his error. He further explained that he went back to Central Evidence and Property and corrected the error by scratching out the wrong number, writing the correct number, and initialing the correction. Detective Radosti identified the line-up with the victim’s signature on the back of it. Detective Radosti further testified that he first met the victim when he showed her the line-up and that he obtained an arrest warrant for E.P. based on the victim’s identification of him.
After Detective- Radosti finished testifying, the State attempted to recall Ms. Smith to have her identify the photographic line-up. At that point, the defense filed an oral motion to suppress the identification evidence (the line-up). The defense’s motion was not based on the victim’s viewing the line-up; rather, it was based on the alleged unconstitutional manner in which the State had obtained the recent photograph of E.P. to include in that line-up. (This issue, which we find dispositive of this appeal, is discussed in detail below.) Following arguments on the record on the defense’s motion, the trial court denied the motion to suppress. | R The court, however, granted the defense’s request to stay the *1070 proceedings so that it might apply for supervisory writ to review this ruling. On that same date, the court rendered a judgment in which it found that the State had proved the elements of the offense beyond a reasonable doubt and adjudicated E.P. guilty.
Although the victim, Ms. Smith, was never recalled to identify the line-up, the record reflects that the trial court, over the defense’s objection, admitted the lineup, which had been identified by Detective Radosti. The court then considered that line-up in determining that the State proved its case. The record, therefore, does not support E.P.’s contention that the adjudication hearing was not completed.
E.P. also contends that the trial court erred in denying his motion to suppress the identification evidence as unconstitutionally seized. He argues that the method the State used to present him as a suspect in the line-up is unconstitutional so that the line-up should have been suppressed. The State counters that the identification evidence was obtained pursuant to an order permitting the photographing of E.P. in accordance with La. Ch. C. art. 818, and, therefore, was properly admitted.
The record reflects that on May 4, 2004, a juvenile court judge signed an order granting the State’s Motion to Photograph and Fingerprint. In that motion, the State requested an order allowing “reasonable photographic and fingerprint identification procedures pursuant to Louisiana Children’s Code Article 818(A)(1) of [E.P.].” In support of that request, the State’s sole representation was that “[s]aid child is a suspect for violation of 14:65, relative to SIMPLE ROBBERY.” The record reflects that no affidavit accompanied that motion.
[ 4Article 818 of the Louisiana Children’s Code provides:
A. A child may be photographed or fingerprinted only in connection with being taken into custody for the commission of either:
(1) A felony-grade delinquent act.
(2) A misdemeanor-grade delinquent act involving the use of a dangerous weapon.
B. Any child other than those described in Paragraph A of this Article can be photographed or fingerprinted only upon motion of the district attorney and court order.
C. Upon motion of the district attorney, the court in its discretion can order any child to submit to other reasonable identification procedures, such as, to provide handwriting exemplars or to stand in a line-up.
D. Fingerprints and photographs taken pursuant to Paragraph A or B of this Article shall be maintained and indexed separately from those of adults. They shall be made available only to law enforcement and correctional agencies for purposes related to their official functions. Fingerprints taken pursuant to Paragraph A or B shall be submitted to the central fingerprint repository maintained by the Louisiana Bureau of Criminal Identification and Information as specified under R.S. 15:590 et seq., and to the fingerprint repository, if any, maintained by the local law enforcement agency.
La. Ch. C. art. 818.
Although the State’s motion and the trial court’s order refer to Paragraph A of Article 818, it is undisputed that E.P. was not in custody at the time the State sought an order allowing him to be photographed and fingerprinted. At most, at the point at which the Order was applied for, E.P. had been identified as a suspect in a purse-snatching incident by Detective Radosti. *1071 Therefore, Paragraph A of Article 818 is not applicable. Rather, the relevant portion of Article 818 is Paragraph B, which provides for the photographing and fingerprinting of any child other than one described in Paragraph A.
| t;The issue presented by this appeal is whether Paragraph B constitutionally could be applied to allow E.P. to be picked up and taken to be photographed and fingerprinted. The jurisprudence construing Article 818 and its source provision, former C.J.P. art. 36, is scant. See State v. Thrash, 497 So.2d 414, 417 (La.App. 3 Cir.1986)(noting that “[tjhere appears to be no Louisiana jurisprudence interpreting this article [C.J.P. art. 36.]”). Indeed, our research reveals no published decision construing Paragraph B.
In this case, the trial court found that Paragraph B carved out a separate category of individuals from those covered by Paragraph A, and allowed the photographing and fingerprinting of juveniles who were not in custody for either class of offense covered by Paragraph A. E.P. argued that Paragraph B, if applied as written, potentially would allow the photographing and fingerprinting of any child in New Orleans if the district attorney filed a motion and a judge was willing to sign it. The trial court agreed and acknowledged that this would give the article an “absurd construction.” However, because it found that the “legislative purpose was to recognize two separate categories” of juveniles who could be photographed and fingerprinted, the trial court ruled against E.P. and refused to suppress the identification evidence.
Paragraph A of Article 818 deals with a juvenile in custody charged with one of two categories of offenses. Paragraph B, as written, applies to any juvenile other than one in custody for one of those two categories of offenses under Paragraph A. This would include juveniles not in custody, such as E.P., and juveniles in custody, but charged with offenses other than the two categories of offenses covered by Paragraph A.
LOn appeal, the State argues that, because Paragraph B allows a juvenile to be photographed and fingerprinted only upon motion and court order, there is an implicit requirement that the court can grant the motion only if it finds that probable cause has been established. The State contends, therefore, that the statute is not constitutionally overbroad. The State further contends that Detective Radosti “relayed to the Judge all of the facts of the case, as well as conversations he had with other officers, all of which led to the development of E.P. as a suspect” and that the trial court then determined that there was probable cause to issue the order to photograph and fingerprint E.P.
As noted, the State submitted no affidavit in connection with the Motion to Photograph and Fingerprint filed in this case. As a result, the only information we have with regard to the showing made in support of the Motion to Photograph and Fingerprint is Detective Radosti’s testimony explaining how he developed E.P. as a suspect. Detective Radosti explained that he received information from his captain regarding a complaint by a victim of an unrelated purse-snatching incident. Detective Radosti followed up on that information and developed E.P. as a suspect in that other incident. The victim of that incident did not make a report, and the matter was not pursued. Detective Ra-dosti, however, noticed similarities between that incident and the incident at issue in this appeal. He testified that there was a “kind of fit” in that both matters involved an attempted purse snatching, occurring in the same area, and the description of the perpetrator in each *1072 incident was basically the same. On that basis, Detective Radosti identified E.P. as a possible suspect in this case and obtained E.P.’s name and date of birth from the school resource officer. Because the only photograph he could locate of E.P. was three 17years old, Detective Radosti sought the court order to photograph and fingerprint at issue.
Even if we were to adopt the State’s reasoning, the procedure followed in obtaining E.P.’s photograph and fingerprints cannot pass constitutional muster. As noted, the State alleges that Detective Ra-dosti communicated to the juvenile judge who granted the motion the basis of his suspicion of E.P. as a suspect. Even, assuming the information that Detective Ra-dosti communicated to the judge tracked his testimony at the adjudication hearing, that information would not have been sufficient to establish probable cause.[4] There is no question that E.P. could not have been taken into custody based on that information. At best, it could be said that Detective Radosti had a suspicion, which for purposes of argument we will characterize as a reasonable suspicion, that E.P. had committed the crime of purse snatching.[5] However, even an adult cannot be taken from his home, and photographed and fingerprinted unless he has been arrested, which would require probable cause. Yet, E.P., a juvenile, who was not in custody and who merely was suspected to have committed a crime, was taken from his home, fingerprinted and photographed.[6] Clearly, a juvenile is entitled to at least, as much protection as an adult.[7]
|sThe procedure used by the State to obtain the photograph used in the line-up upon which the trial court based its adjudication of E.P. was not constitutional. Therefore, the identification should have been suppressed. We reverse the trial court, and remand this matter for further proceedings consistent with this opinion.

DECREE

For the foregoing reasons, the judgment of the juvenile court is reversed.
REVERSED.

. Pursuant to Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal, the initials of the juvenile involved in this matter will be used instead of the juvenile's real name.

. In its petition, the State requested the E.P. be adjudicated delinquent for violating La. R.S. 14:65.1, relative to purse snatching, to-wit: "The theft of money and the contents within a purse or wallet, belonging to Stephanie Smith, from the victim's person or in her immediate control at the time of the theft, by use of force or intimidation, or snatching but not armed with a dangerous weapon, on Thursday, April 29, 2004 at approximately 8:40 A.M. at 2834 Poncedelo St., in the Parish of Orleans.”

. The purpose of the stay was to allow E.P.’s counsel to file a -writ application seeking review of the trial court's denial of his motion to suppress identification evidence. As discussed elsewhere in this opinion, this motion is based on the alleged unconstitutional method the State employed to obtain a current photograph of E.P. to include in the line-up it showed the victim. E.P.’s counsel did not file a writ application; instead, his counsel agreed to continue with the disposition hearing, reserving the right to raise this issue on appeal.

. Although we find the procedures employed in this case are unconstitutional, we do not address whether in other contexts oral communications with the judge would be sufficient.

. The motion actually stated that E.P. was suspected of the crime of simple robbery, not purse snatching, a violation of R.S. 14:65.1.

. Detective Radosti testified that when he went to E.P.’s home to bring him to juvenile to be photographed, E.P. believed he was being arrested; and E.P. not only resisted him, but also tried to back hand him. As a result, the State alleges that Detective Radosti had "to arrest him [E.P.] for that.” E.P., however, disputes this allegation.

.We note that even when a juvenile can be photographed under Paragraph A or B of Article 818, Paragraph D of that article expressly provides that "[fjingerprints and photographs taken pursuant to Paragraph A or B of this Article shall be maintained and indexed separately from those of adults.” La. Ch. C. art. 818(D). See also La. Ch. C. art. 412 (providing for confidentiality of juvenile records).